1

2                                                            O

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   L'Garde, Inc.,                    )   CV 11-4592 RSWL (AGRx)
                                        )
12                                      )
                     Plaintiff,         )   **ORDER Re: Plaintiff's**
13                                      )   **Motion to Remand [10];**
          v.                            )   **Defendant's Motion to**
14                                      )   **Dismiss [7]**
                                        )
15                                      )
     Raytheon Space and Airborne        )
16   Systems, a business of             )
     Raytheon Company,                  )
17                                      )
                                        )
18                   Defendant.         )
                                        )
19   _____)

20        On July 19, 2011, Plaintiff L'Garde Inc.'s Motion

21   to Remand [10] and Defendant Raytheon Space and

22   Airborne Systems, a business of Raytheon Company's,

23   Motion to Dismiss [7] came on for regular calendar

24   before this Court.  The Court having reviewed all

25   papers submitted pertaining to these Motions and having

26   considered all arguments presented to the Court, **NOW**

27   **FINDS AND RULES AS FOLLOWS:**

28        The Court hereby **DENIES** both Plaintiff L'Garde,

                                 1

Inc.'s Motion to Remand and Defendant Raytheon Space and Airborne Systems' Motion to Dismiss.

## I.    **Background**

Plaintiff L'Garde, Inc. (hereinafter, "Plaintiff") filed a Complaint on April 19, 2011 in Los Angeles Superior Court against Defendant Raytheon Space and Airborne Systems, a business of Raytheon Company (hereinafter, "Defendant"). Plaintiff alleged in its Complaint claims against Defendant for breach of contract and fraud.

Defendant states that it was served with the Summons and Complaint on April 29, 2011. (Def.'s Notice of Removal, ¶ 3.) On May 27, 2011, Defendant filed a Notice of Removal of this Civil Action on the basis of diversity and federal question jurisdiction [1].

## II.   **Legal Standards**

### 1.   Judicial Notice

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of adjudicative facts only. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either 1) generally known within the territorial jurisdiction of the trial court or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court must take judicial notice if a party requests it and

supplies the court with the requisite information. Fed.
R. Evid. 201(d).

2. <u>Remand</u>

In deciding whether to remand a case, this Court
must determine whether the case was properly removed to
this Court. The right to remove a case to federal
court is governed by 28 U.S.C. § 1441, which in
relevant part states that "any civil action brought in
a State court of which the district courts of the
United States have original jurisdiction, may be
removed by the defendant...." 28 U.S.C. § 1441(a).
District courts have diversity jurisdiction over all
civil actions between citizens of different states
where the amount in controversy exceeds $75,000,
exclusive of interest and costs. 28 U.S.C. § 1332.

The Court may remand a case to state court for lack
of subject matter jurisdiction or defects in removal
procedure. 28 U.S.C. § 1447(c). The defendant has the
burden of proving that removal is proper and that all
of the prerequisites are satisfied. If at any time
before final judgment it appears that the district
court lacks subject matter jurisdiction over a case
that has been removed to federal court, the case must
be remanded. 28 U.S.C. § 1447(c).

The Ninth Circuit strictly construes the removal
statute against removal jurisdiction and federal
jurisdiction must be rejected if there is any doubt as
to the right of removal in the first instance. <u>Gaus v.</u>

3

<u>Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992).
Moreover, the burden of overcoming the "strong presumption" against removal is always on the defendant. <u>Id.</u>

### 3. <u>Motion To Dismiss</u>

In a Rule 12(b)(6) motion to dismiss, the Court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party. <u>Klarfeld v. United States</u>, 944 F.2d 583, 585 (9th Cir. 1991). A dismissal can be based on the lack of cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988). A party need not, however, state the legal basis for his claim, only the facts underlying it. <u>McCalden v. California Library Ass'n</u>, 955 F.2d 1214, 1223 (9th Cir. 1990).

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Klarfeld</u>, 944 F.2d at 585; <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987). The court need not, however, accept conclusory allegations or unreasonable inferences as true. <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

Additionally, claims of fraud must satisfy not only

4

Rule 12(b)(6), but also the heightened pleading standard of Rule 9(b).  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b).

The heightened pleading standard of Rule 9(b) is designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993). In order to meet this standard, the plaintiff must allege the "who, what, where, when, and how" of the fraudulent conduct. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).  The complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004).  "The plaintiff must set forth what is false or misleading about a statement, and why it is false." Vess, 317 F.3d at 1106 (quoting Decker v. Glenfed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994)).

However, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). Nevertheless, states of mind must still be alleged. Bender v. Southland Corp., 749 F.2d 1205, 1216 (6th

Cir. 1984). <u>See</u> <u>also</u> <u>Fecht v. Price Co.</u>, 70 F.3d 1078, 1082 n.4 (9th Cir. 1995)(stating "the plaintiffs need 'simply ... say [ ] that scienter existed' to satisfy the requirements of Rule 9(b)")(quoting <u>In re GlenFed, Inc. Sec. Lit.</u>, 42 F.3d 1541, 1547 (9th Cir. 1994)).

## III. **Analysis**

### 1. <u>Judicial Notice</u>

Defendant requests the Court take judicial notice of results of records searches from the California Secretary of State website including: (A) the search results for California corporations with "Raytheon" in their name, (B) the "Business Entity Detail" of Raytheon Company, and (C) the search results for California corporations with "Space and Airborne" in their name. As a preliminary matter, the Court **GRANTS** Defendant's Request for Judicial Notice.

In <u>Hansen Beverage Co. v. Innovation Ventures, LLC</u>, the District Court for the Southern District of California noted that just as public records and government documents are generally considered "not to be subject to reasonable dispute," so too does this include "[p]ublic records and government documents available from reliable sources on the Internet." <u>Hansen Beverage Co. v. Innovation Ventures, LLC</u>, No. 08-CV-1166-IEG, 2009 WL 6597891, at *1 (S.D. Cal Dec. 23, 2009)(citing <u>Jackson v. City of Columbus</u>, 194 F.3d 737, 745 (6th Cir. 1999)). The court in <u>Hansen</u>

<u>Beverage</u> noted that internet pages printed off the FDA website were similarly reliable to other traditional public documents. <u>Id.</u> at *2.

Here, similar to <u>Hanson Beverage</u>, Defendant seeks judicial notice of the results of a records search from a government website, one recognized by courts as a source of reliable documentation. <u>Id.</u> (citing <u>Paralyzed Veterans of Am. v. McPherson</u>, No. C 06-4670, 2008 U.S. Dist. LEXIS 69542, at *5 (N.D. Cal. Sept. 8, 2008)("Information on government agency websites has often been treated as properly subject to judicial notice.").

The Court finds that the accuracy of the results of records searches from the Secretary of State for the State of California corporate search website can be determined by readily accessible resources whose accuracy cannot reasonably be questioned. Therefore, the Court hereby **GRANTS** the Defendant's request and takes judicial notice of the content referenced in Exhibits A-C attached to Defendant's Request for Judicial Notice [16]. Specifically, the Court takes judicial notice of Exhibit A: the results of a records search from the Secretary of State for the State of California corporate search website, located at http://kepler.sos.ca.gov, conducted on June 28, 2011, for information on record with the California Secretary of State for corporations containing "Raytheon" in their name; Exhibit B: the "Business Entity Detail" for

Raytheon Company, dated June 28, 2011, printed from the Secretary of State for the State of California corporate search website; and Exhibit C: the results of a records search from the Secretary of State for the State of California corporate search website, located at http://kepler.sos.ca.gov, conducted on June 28, 2011, for information on record with the California Secretary of State for corporations containing "Space and Airborne" in their name.

   2.   <u>Motion To Remand</u>

   Plaintiff argues this Case should be remanded to state court because there is (1) a forum selection clause requiring Plaintiff's choice of venue, (2) Defendant has failed to prove diversity jurisdiction, and (3) Defendant has failed to prove there is federal question jurisdiction.

   First, Plaintiff argues there is a mandatory forum selection clause in the Letter Subcontract requiring Plaintiff's choice of forum.

   "Federal law governs the enforceability of forum selection clauses in cases removed on the basis of diversity jurisdiction." <u>See</u> <u>Manetti-Farrow, Inc. v. Gucci Am., Inc.</u>, 858 F.2d 509, 513 (9th Cir. 1988).  A forum selection clause is presumed valid and courts must enforce the clause absent a showing that such enforcement would be unjust and unreasonable. <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 15 (1972). However, a mandatory forum selection clause

constituting a waiver of a defendant's right to removal will only be found where "venue is specified with mandatory language." <u>Docksider, Ltd. v. Sea Tech., Ltd.</u>, 875 F.2d 762, 764 (9th Cir. 1989).

The Court finds that the forum selection clause in this Case contains no limiting or exclusivity language; it does not name a required court, judge, or jurisdiction where the case must be heard. Unlike the forum selection clause in <u>Hunt Wesson Foods, Inc. v. Supreme Oil Co.</u>, which at least required the case to be heard in a specific County, the forum selection clause contained in the Letter Subcontract here merely requires that a court of competent jurisdiction hear any dispute arising out of the Letter Subcontract.[1] 817 F.2d 75, 76 (9th Cir. 1987). Therefore, the Court finds the forum selection clause in the Letter Subcontract is too general to qualify as a mandatory forum selection clause. See <u>Hunt Wesson Foods</u>, 817 F.2d 75. <u>Calisher & Assocs., Inc. v. RGCM, LLC</u>, 373 Fed. App'x. 697 (9th Cir. 2010). Rather, the Court finds that the clause relied on by Plaintiff here is a permissive forum selection clause because it contains vague, non-exclusive language. See <u>N. Cal. Dist. Council of Laborers v. Pittsburg - De Moines Steel Co.</u>,

---

[1] The clause states, "Any controversy or claim...aris[ing] out of or in connection with this Purchase Order...may be resolved by submitting the claim to a court of competent jurisdiction." (Pl.['s] Mot. to Remand, Declaration of Brian Donovan, ¶ 2, Ex. 1, at 2.)

69 F.3d 1034, 1037 (9th Cir. 1995). Moreover, the Court finds that the permissive forum selection clause does not amount to an express waiver by Defendant of it's right to removal. <u>See</u> <u>Ferrari, Alvarez, Olsen & Ottoboni v. Home Ins. Co.</u>, 940 F.2d 550, 554 (9th Cir. 1991).

Accordingly, because the Court finds the Letter Subcontract contains a permissive forum selection clause and that Defendant has therefore not expressly waived it's right to removal, the Court further finds that it may hear this Case so long as it has proper subject matter jurisdiction. As such, the Court **DENIES** Plaintiff's Motion to Remand based on the forum selection clause.

Second, Plaintiff argues that this Court lacks diversity jurisdiction because there is no complete diversity of citizenship between the Parties.

To determine diversity of citizenship in the context of diversity jurisdiction, a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its "principal place of business." 28 U.S.C. § 1332(c)(1). Recently, in <u>Hertz Corp. v. Friend</u>, the Supreme Court held that a corporation's principal place of business is solely determined by the state of its "nerve center." 130 S. Ct. 1181 (2010). A corporation's nerve center is "where a corporation's officers direct, control, and coordinate the corporation's activities...

[a]nd in practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination." Id. at 1192.

Plaintiff L'Garde, Inc. is incorporated in California, and has its headquarters in Tustin, California. Defendant Raytheon Space and Airborne Systems is an unincorporated business division of Raytheon Company. Raytheon Company is incorporated in Delaware. Ninth Circuit precedent holds that, unlike a legally incorporated subsidiary, an unincorporated division of a corporation does not possess the formal separateness required and is therefore not an independent entity for jurisdictional purposes. See Breitman v. May Co. Calif., 37 F.3d 562, 564 (9th Cir. 1994)(noting that the distinction between an incorporated subsidiary and an unincorporated division is important for determining diversity jurisdiction). Finding Breitman particularly instructive, the Court finds here that Defendant's citizenship is based on Raytheon Company. Accordingly, as Raytheon Company is incorporated in Delaware, the Court finds that Defendant is also a citizen of Delaware for diversity jurisdiction purposes.

However, to fully resolve the jurisdictional issue, the Court must also determine in which state Defendant has its principal place of business. As such, the Court next determines, based on the Supreme Court's

guidance as to the nerve center test, whether Defendant has adequately pled the location of its headquarters or its "actual center of direction, control, and coordination." <u>Hertz</u>, 130 S. Ct. at 1192.

California district courts have found that reliance on a single piece of evidence, such as a Secretary of State printout, is insufficient for a party to prove the location of its headquarters under the nerve center test. <u>See</u> <u>N. Cal. Power Agency v. AltaRock Energy, Inc.</u>, No. 11-1749, 2011 WL 2415748, at *2-3 (N.D. Cal. June 15, 2011)(finding a Secretary of State printout insufficient as sole piece of evidence to prove a party's nerve center); <u>Ganensan v. GMAC Mortg., Inc.</u>, No. C 11-0046, 2011 WL 1496099, at *2 (N.D. Cal. Apr. 20, 2011)(finding conclusory statements of location of headquarters insufficient absent other evidence under nerve center test). However, here Defendant pleads a variety of facts which persuade the Court to find, based on the totality of the circumstances, that the headquarters of Raytheon Company are located in Waltham, Massachusetts. <u>See</u> <u>Hertz</u>, 130 S. Ct. at 1195 (finding "the mere filing of a form ... listing a corporation's 'principal executive offices' would, without more," be insufficient proof to establish a corporation's "nerve center").

Specifically, Defendant identifies 870 Winter Street, Waltham, Massachusetts 02451 as the location of its headquarters and pleads that: five of its twelve

executive officers, including its CEO, work out of the
Waltham office; nationwide operations and control as to
its Human Resources, Information Technology, and
Finance Departments originate from there; its Board of
Directors meet there; and the California Secretary of
State and Defendant's Form 10-K recognize Raytheon
Company's headquarters as Waltham, Massachusetts.
(Opp'n to Pl.['s] Mot. to Remand, Declaration of Woods
Abbot, ¶¶ 5-8.)(Req. for Jud. Notice, Ex. B.)(Opp'n to
Pl.['s] Mot. to Remand, Declaration of Aaron Belzer,
Ex. A).

Accordingly, based on the totality of the above
referenced facts, the Court finds that Raytheon
Company's principal place of business is in Waltham,
Massachusetts.  As Defendant Raytheon SAS is an
unincorporated division of Raytheon Company, it does
not possess citizenship independent of its parent
corporation, Raytheon Company.  See Breitman, 37 F.3d
at 564.  Therefore, under Breitman, the Court finds
Defendant Raytheon SAS's principal place of business to
be in Waltham, Massachusetts for purposes of
determining diversity jurisdiction.

The Court also notes that this Action is analogous
to the Southern District Court of California's recent
decision, In re Hydroxycut Marketing and Sales
Practices Litigation, No. 09MD2087, 2010 WL 2998855, at
*2-4 (S.D. Cal. July 29, 2010).  There, plaintiffs
alleged that defendant was a non-diverse New York based

company because it had a large facility in New York. The Court disagreed, noting that the high level executive decisions were made in Ontario, Canada, despite the presence of the large New York facility. Similarly, in the present Case, Plaintiff assumes Defendant Raytheon SAS is a California company because of its highly visible business activities within the state; however, Defendant has pled facts indicating its executive-level decisions are made from Raytheon Company's Waltham, Massachusetts headquarters and, under the "nerve center" test, the Court finds that to be determinative.

Therefore, the Court finds that because there is complete diversity of citizenship between the Parties, and the amount in controversy requirement is not disputed, the Court has proper subject matter jurisdiction to hear this Case. As such, the Court **DENIES** Plaintiff's Motion to Remand on the basis of diversity jurisdiction.

Third, Plaintiff argues this Court lacks federal question jurisdiction and should apply California common law to resolve the Case at bar. Defendant argues, in Opposition, that this Case implicates unique federal interests and requires the application of uniform federal common law thereby giving this Court federal question jurisdiction.

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil

actions arising under the Constitution, laws, or
treaties of the United States." 28 U.S.C. § 1331.  The
burden of establishing federal question jurisdiction
falls on the party invoking the removal statute.
Williams v. Caterpillar Tractor Co., 786 F.2d 928, 930
(9th Cir. 1986).  The fact that the movant must prove
that the lawsuit involves a uniquely federal interest
does not, however, authorize federal courts to invoke
federal common law jurisdiction, "[it] merely
establishes a necessary, not a sufficient, condition
for the displacement of state law." Boyle v. United
Tech. Corp., 487 U.S. 500, 507 (1988). "Displacement
will occur only where ... a 'significant conflict'
exists between an identifiable 'federal policy or
interest and the [operation] of state law' ... or the
application of state law would 'frustrate specific
objectives' of federal legislation...." Id. (citations
omitted). See also Wallis v. Pan American Petroleum
Corp., 384 U.S. 63, 68 (1966)(noting that in deciding
whether to fashion rules of federal common law,
"normally the guiding principle is [the existence of] a
significant conflict between some federal policy or
interest and the use of state law...").

    Thus, federal common law jurisdiction replaces
existing state law in this Case "only if (1) the
dispute implicates a uniquely federal interest and (2)
a significant conflict exists between an identifiable
federal policy or interest and the application of state

law to the dispute or the application of state law would frustrate specific objectives of federal legislation." <u>Texas Indus.</u>, 451 U.S. at 640; <u>Boyle</u>, 487 U.S. at 507.

Under <u>Erie Railroad v. Thompkins</u>, having found diversity jurisdiction proper, this Court would ordinarily apply California state law to resolve the claims at issue in this Action. 304 U.S. 64 (1938). This presumption is further bolstered by the Letter Subcontract, authored by Defendant, holding "irrespective of the place of performance, this Purchase Order will be construed and interpreted according to the laws of the State from which the Purchase Order is issued, without resort to the State's Conflict of Law Rules." (Pl.['s] Mot. to Remand, Declaration of Brian Donovan, ¶ 2, Ex. 1, at 2.) The above referenced Purchase Order was issued in California. <u>Id.</u> However, if Defendant meets its burden of proving federal question jurisdiction, this Court will be compelled to replace California state law with federal common law to resolve this Case. <u>Boyle</u>, 487 U.S. at 507.

Defendant asserts this Case involves a uniquely federal interest because the dispute involves performance of a subcontract under a government defense procurement contract, containing standard federal contract clauses. Defendant argues the disputed subcontract implicates national security and requires

the imposition of federal common law to interpret the
standard federal clauses consistently with existing
federal precedent.

Defendant relies principally on the Ninth Circuit
case of New SD, Inc. v. Rockwell Int'l Corp., 79 F.3d
953 (9th Cir. 1996). New SD involved a dispute between
a prime contractor and its subcontractor on an Air
Force contract for the development of a space based
anti-ballistic missile. Id. The Ninth Circuit held
that "the construction of subcontracts, let under prime
contracts connected with the national security, should
be regulated by a uniform federal law." New SD, 79 F.3d
at 955 (quoting American Pipe & Steel Corp. v.
Firestone Tire & Rubber Co., 292 F.2d 640, 644 (9th
Cir. 1961). Since the dispute in New SD involved a
prime contractor and a subcontractor on a government
contract clearly implicating national security
interests, the Court found federal common law must
replace state law in order to provide a uniform federal
standard which would prevent the cost of national
security from being "increased in the process." New SD,
70 F.3d at 955. However, the Court finds that this
case relied upon by Defendant concerns matters of
national security that are simply not present here.

Furthermore, Defendant argues that this Case
requires the imposition of federal common law because
"significant federal interests" may be affected and
it's defense will rely on Federal Acquisition

17

Regulation (hereinafter, "FAR") clauses incorporated into the Letter Subcontract.  Additionally, Defendant avers that if found liable for breach of contract to Plaintiff, it may be able to pass on its damages to the United States Government through the prime contractor on the "ISIS" project.[2]

The Court finds Defendant's arguments unpersuasive. The underlying issue in this Case is whether Defendant promised to enter into a definitive subcontract with Plaintiff.  Plaintiff alleges Defendant took advantage of its "small business" status in order to win the bid from Lockheed Martin, the prime contractor for the ISIS project.  Plaintiff argues Defendant breached a contract to negotiate a future definitive subcontract in good faith, and that Defendant committed fraud because it never intended to honor the agreement between the Parties.

The fact that Defendant may rely on FAR clauses in its defense, and may try to pass off damages it incurs to the United States Government does not satisfy either of the requirements set forth in Boyle that a removing party must show (1) the dispute implicates a uniquely federal interest and (2) there is a significant conflict between an identifiable federal policy or

---

[2] The goal of the ISIS project is to develop an airship capable of operating for long periods of time at "stratospheric altitudes" with fixed radars "capable of tracking small missiles, vehicles and persons in a manner" beyond the Government's current capabilities. (Compl. ¶ 5).

interest and the application of state law to the
dispute, or that the application of state law would
frustrate specific objectives of federal legislation.
487 U.S. at 507. The Court finds the contract-based
claims raised in Plaintiff's Complaint relate to an
agreement to negotiate a future definitive subcontract
between the Parties in which no substantial rights or
duties of the United States are implicated.

This Case is factually analogous to <u>Northrop Corp.
v. AIL Systems, Inc.</u>, 959 F.2d 1424 (7th Cir. 1992), in
which the plaintiff sued the defendant for an alleged
breach of a "teaming agreement." There, the parties
successfully "teamed" up to win a bid for an Air Force
contract and while they initially worked together,
defendant eventually refused to subcontract out the
work to plaintiff in order to realize a cost-reduction.
<u>Id.</u> at 1425. The Seventh Circuit held the teaming
agreement did not rise to the level of a unique federal
interest sufficient to warrant the imposition of
federal law because "[t]he federal government is not
liable for any damages [Defendant] may owe [Plaintiff]
for the alleged breaches of the teaming agreement. Nor
is there any indication that the government will pay a
higher price for the [contract] if [Defendant] is found
liable to [Plaintiff]." <u>Id.</u> at 1427.

Thereafter, the Ninth Circuit held the <u>New SD</u> and
<u>Northrop</u> decisions to be in harmony because the source
of the <u>Northrop</u> dispute arose from the "teaming

agreement," not the actual "subcontracts which govern actual work being performed on federal projects that implicate federal interests much more directly." New SD, 79 F.3d at 955 (quoting Northrop, 959 F.2d at 1428).

Here, the Plaintiff's Complaint is devoid of any question of unique federal interest and simply alleges a dispute over the meaning of the Letter Subcontract's provision requiring the Parties to negotiate in good faith a subsequent definitive subcontract. Thus, Plaintiff's claims are based on its right to be a potential subcontractor of later phases of the ISIS subcontract.

On balance, this is not a case, like New SD or American Pipe "[w]here the federal interest requires that 'the rule must be uniform throughout the country,' [and determining that the] 'entire body of state law applicable to the area conflicts and is replaced by federal rules.'" New SD, 79 F.3d at 955 (citing American Pipe at 643). Rather, this Case is much more similar to Northrop because the source of the dispute is not the quality of work under the subcontract but on an alleged agreement promising future subcontracting work. Additionally, the Parties are a step further removed from privity with the United States Government as this dispute does not involve a prime contractor. Nor is national security so clearly implicated, as the disputed ISIS phase lacked a defense priority rating.

While Defendant has cited several FAR clauses present in the Letter Subcontract, Defendant has not shown that an understanding and interpretation of such clauses requires application of federal common law. Nor has Defendant alleged in what way the application of California state law offends the proper resolution of this matter. Defendant's bald assertion that it "may be able to pass on to the Government" its potential damages owed to Plaintiff, also falls short of satisfying the Boyle standard in which the Supreme Court contrasted cases where Government liability was merely speculative versus actual and imminent, thereby requiring the application of federal common law. See Boyle, 487 U.S. 506-07. See also New SD, 79 F.3d at 954 (noting the FAR clause in the contract would require the Government to pay for any damages the defendant prime contractor caused the plaintiff subcontractor, therefore finding the application of federal common law necessary to prevent escalating national security costs to the United States).

Here, unlike in New SD, but consistent with Northrop, Defendant has not pled any facts indicating that the cost of National Security stands to be increased should it be held liable under Plaintiff's breach of contract and fraud claims. Moreover, Defendant has failed to persuade the Court that applying California law to resolve the current matter will conflict with a significant federal policy or

interest.  Defendant claims that several FAR clauses
are implicated and will form the basis of "one of its
major defenses" (Opp'n to Pl.['s] Mot. to Remand , 11),
but fails to plead anything beyond such conclusory
statements.  Therefore, the Court finds that Defendant
has not met its burden of proving that the imposition
of federal common law is required, and as such, this
Court does not have federal question jurisdiction and
will apply California law to resolve the present
dispute.

However, the Court still finds it has subject
matter jurisdiction on the basis of diversity to hear
the present matter.  Accordingly, the Court **DENIES**
Plaintiff's Motion to Remand.

3.  Motion To Dismiss

Defendant argues that Plaintiff has failed to
satisfy the heightened pleading requirements of Rule
9(b) as to its second cause of action for fraud.

Under California law "[t]he elements of fraud,
which give rise to the tort action for deceit, are (a)
misrepresentation (false representation, concealment,
or nondisclosure); (b) knowledge of falsity (or
'scienter'); (c) intent to defraud, i.e., to induce
reliance; (d) justifiable reliance; and (e) resulting
damage." Lazar v. Super. Ct., 12 Cal. 4th 631, 638
(1996).

While the substantive elements of a fraud claim are
determined by state law, the procedural requirements

are governed by Rule 9(b)'s heightened pleading standard. <u>Vess</u>, 317 F.3d at 1103. While each element of a fraud claim must be alleged with heightened particularity, conditions of the mind may be averred generally. Fed. R. Civ. P. 9(b). The allegations of fraud must be accompanied by the who, what, where, when, and how of the fraud charged. <u>Vess</u>, 317 F.3d at 1106.

The Court finds that Plaintiff has pled with particularity the elements of fraud under California law. Plaintiff's Complaint pleads with particularity facts indicating Defendant made material misrepresentations as to its intent to contract with Plaintiff a long term definitive subcontract, and that Plaintiff reasonably relied on these misrepresentations to its detriment. Contrary to Defendant's argument, the Court finds Plaintiff need not plead an exact amount of damages in its Complaint. <u>See</u> <u>Toscano v. Ameriquest Mortg. Co.</u>, No. CIV-F-07-0957, 2007 WL 3125023, at *6 (E.D. Cal. Oct. 24, 2007).

The Court finds that Plaintiff has also sufficiently pled the scienter requirement of fraud by averring generally facts which indicate Defendant knew its misrepresentations were false at the time of contracting. <u>See</u> <u>Locke v. Warner Bros., Inc.</u>, 57 Cal. App. 4th 354, 368 (Ct. App. 1997)(holding "[f]raudulent intent must often be established by circumstantial evidence, and may be inferred from such circumstances

as defendant's ... failure even to attempt performance...").

Therefore, the Court finds Plaintiff has pled with particularity the elements of a fraud claim under Rule 9(b), and Defendant's Motion to Dismiss for failure to state a claim for fraud is hereby **DENIED**.

## III. <u>Conclusion</u>

For the reasons heretofore stated, the Court **DENIES** both Plaintiff's Motion to Remand, and Defendant's Motion to Dismiss Plaintiff's second cause of action for fraud pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

DATED: July 26, 2011.

**IT IS SO ORDERED.**

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge